Our next case is Wireless Ink Corporation v. Facebook, Inc. We have you down for five minutes for your rebuttal, is that correct? Yes, Your Honor. Okay, you may proceed, please. Mr. Ryan, just a housekeeping question. I seem to remember another Wireless Ink v. Facebook case from a year, year and a half ago. Yes, Your Honor. Is that completely over with? Yes, that was here on summary judgment of non-infringement and decisions below were affirmed. Okay. Those cases are closed. Okay. This patent, the 801 patent, is the subject of litigation in the Southern District of New York, but it has stayed pending the outcome of this re-examination. Good morning, Your Honors. May it please the Court. Joseph Ryan for Appellant, Wireless Ink Corporation. The PTAB has construed each of the independent claims of the 801 patent in a manner that is inconsistent with the BRI of that claim. More particularly, the PTAB interprets each independent claim in a manner that is inconsistent with the plain meaning of the words of the claim and in a manner that is not supported by the specification. It appears that the PTAB does not identify any particular support in the specification for its claim construction. Contrary to clear mandate, cases like In Re Quoso, more recent cases like Microsoft v. Proxicon, these cases emphasize, like Joseph Chen emphasized in an earlier case, that you can't construe the claims in a vacuum. You have to look through the specification. The erroneous claim construction has infected each of the 102 and 103 rejections involving eBallot. These rejections should therefore be reversed and the case remanded to the PTAB. Okay. I know you're setting up your appeal right now as a claim construction case. But if we were to conclude that Niebauer or there's substantial evidence to support the finding that Niebauer discloses that it's only the founder when it comes to an unlisted club that can invite members and that members of the unlisted club don't have the ability to invite new people to become members of the unlisted club, then doesn't that resolve the question and we don't even have to get to the claim construction issue? No. No, Your Honor. What happened here is that there's a dispute between the parties about how an unlisted Yahoo club works. We say it works one way. They say it doesn't work that way. The board, the PTAB, instead of resolving that factual determination saying, yeah, you're right or the other side's right, they punted and they basically turned it into a claim construction issue. And that's evident from their decision at A9 where they're interpreting claim 14, for example. So, the PTAB says this with regard to claim 14. We note that claim 14, for example, does not require that the plurality of other users are not permitted to invite numerous additional members. So, the PTAB, in effect, construes claim 14 using a double negative, as in the claim does not require that the plurality of other users can't do X. This means that X is the way that we interpret the unlisted Yahoo club. And we believe our interpretation is entirely correct on the references, if you look at them closely. So, this means that the PTAB believes that claim 14 encompasses an arrangement in which the plurality of other users can invite numerous additional members and that those additional members obtain access to the content without mutual consent with the first user. And such an interpretation is inconsistent with the plain meaning of the claim language. And more importantly, it's also inconsistent with the specification. For example, that interpretation seems to read terms like mutually consent, exclusive access, accessibility out of claim 14. Moreover, there's no embodiment disclosed in our specification that operates in the manner alleged by the PTAB. They didn't even look at the spec. They said, effectively, we see there's a dispute between the parties about this factual issue. We say a Yahoo, unless the Yahoo club works this way, they say it doesn't. Instead of resolving that, making factual findings about that, they turned it into a claim construction issue. And in doing so, they made an error because they didn't look at the spec. And they didn't determine if the spec, our spec, supported that interpretation. Where's your clear language that requires control by the first user alone? In the claim, Your Honor? In the claim or in the spec? In the spec, if you look at, for example, figure 14. Do you have a record site on that? It's A43. Now, this is a page associated with what we call a content management website. It's what is referred to, an example of what is referred to in the claim as a first web-based interface. Mobile websites, which are examples of what are referred to in the claim as second web-based interfaces, are generated from this content management site. The content management site is built on a user account basis. It's locked down per user. In other words, password protected. No other user in our arrangement can change the settings of accessibility to a mobile website. It's entirely up to the first user. It's their mobile website. At the end of the day, we're talking about access though, right? Controls to access. Right. This figure 14 relates to the first user setting the controls. Right. It's showing... If later on, an uninvited or somebody other than the first user can issue an invitation and provide access, then isn't that the case that access isn't limited to just the first user? The answer to that, Your Honor, is that the first user ultimately decides all access issues with regard to his or her mobile website. It could be, but then later on, it's like somebody decides the rules to the house. Later on, other people, other invitees can invite whoever they want to into the house. Right. Yeah, but that's up to the... That's the interesting thing, Your Honor. You raise a good point. That is how an unlisted Yahoo club works. It's unlisted. That means that people have to be invited to join, but you have to look also at how the people get into the club after they're invited. There's no mechanism in the unlisted Yahoo club that allows the founder to pass on these folks yes or no before they get in. The way it works is they get in automatically. As long as you have the invitation in your hand, you get in. And without the knowledge of the founder, without the consent of the founder, you just get in. And what happens there is the content that you think is private on that unlisted Yahoo club page is really not. Because any of the other members that you invite... That's the concern I have, is that if in fact the unlisted clubs and Yahoo clubs and Neubauer works the way you say it does, it completely destroys the whole purpose of an unlisted club, which where a founder, Yahoo, the Neubauer reference describes it as a private club to share private information with your friends and family. And so the fact, under your reading, where any member of this private club can go out and bring other new members in, that makes it sound more like a listed club than an unlisted club. Yeah, it's interesting, and this is what the dispute is all about. If you read the reference in detail, and I point you specifically to the bottom of A160, it shows there, it's talking about an unlisted club, a personal club page. It says, the page contains all the elements found on other club pages. Click the invite option in the member tools section to ask other persons to join your club. The member tools are available to all members. That's why they're called member tools. Every member can invite. As the founder of the club, you'll also see these options in the admin tools. The founder has additional tools that the other members don't have. These are called admin tools. The invite option is a member tool available to everybody. The reference doesn't say, when it comes to an unlisted club, members can likewise go into member tools and invite any new people into the founder's unlisted club. If you look at A154, there's a big illustration of using club member options. It's described there how each member can do a whole host of things with member options, like edit your clubs, edit your public profile. What I'm wondering is whether member options, it isn't necessarily something that's related to a particular club where you are a member of that club, but member options is really related to each individual person that might actually be members of a whole series of different clubs. Now, through your member options tool, you can edit all kinds of things about yourself in relation to all these different Yahoo clubs that you're a member of. You can, but the important thing is that you can invite other members. The reference is clear that the invite option is part of the member tools. They call it member tools because they're available to all members. Tools available only to the founder are called admin tools. We don't have to rely just on my interpretation of Niebauer because we've got another reference in the record. It's called Hill. You're into your rebuttal time. You can preserve it or continue on. I'll continue on just for a minute to finish my point about Hill. Hill also describes the same thing, and it's in the record. I point you to A975 at the top of the page, where it describes after you start a club. The club is in the Yahoo club's directory at this point, unless you choose to make it private in step five above. That's a parenthetical, and then after that, and you can start inviting friends to join it using the invite friends link, another parenthetical, you may access the same invitation page at any time using the link under member tools as described previously in this chapter. That's specifically saying that both a listed and unlisted club have the same member tools for invite. I'll stop there. Thank you. Ms. Keefe? May it please the Court. Good morning, Your Honors. Heidi Keefe for Facebook. Judge Chen raises a very, very interesting question and a very important one. Not only are unlisted clubs special in the sense that they're a place where people can privately share information, and by invitation only. Very critical and important distinction. If you look to the record at page A153, you note that chapter 21 points out very specifically the difference between an unlisted club and a listed club is that you must be invited to join an unlisted club and distinguishes it in that way from the normal process of joining a club. Yet at the same time, the real question is, by whom? You must be invited to join an unlisted club by whom? By the founder or by anybody that's an insider into that unlisted club? I think that the most logical interpretation of the reference is that it is by the founder of the club because, again, the point is to share with private family, to have a private place where people can share information. However, even if the Court were to find that, in fact, there was a disclosure that person B, so A invites B, and then B invites C, that doesn't change how the claim is actually read or what the claim actually means. There are accessibility rules that are separate from the designation of users who can become a member of the club. Patent owner would have you conflate the two and say that the accessibility rules are the designation, and therefore it can only be the people who are invited by the user who creates the club in the first instance. It's actually not what the claim calls for. The claim called Claim 14, for example, that we've all been using as exemplary at A88, specifically calls for providing the first web-based interface accessible to a first user, A, who wants to create a club in Yahoo. The first web-based interface of Yahoo being configured to permit the first user to designate a plurality of other users. I'm going to invite B and C to join the club that I'm going to create. B and C will then share access to content with the first user in accordance with accessibility rules established by the first user. Accessibility rules are, did I make my club listed or unlisted? If it is a listed club, the accessibility rules are that anyone can join so long as they are a registered Yahoo member and affirmatively join the club. Accessibility rules for unlisted clubs are, if you are to believe patent owner's version of the interpretation of Yahoo, that the accessibility rules are you must be invited to join the club whether by the first user or by a previously invited user. That means the accessibility rule itself provides the ability for other users to come in. To your example of a house, the rule is I get to decide who comes into the house but then once those people are in the house, I give them permission to invite other people to the party as well. How does that satisfy the mutually consent language in the claim? The first user mutually consents with each and all other users. Yes, Your Honor. So, the first is easy. A invites B, B agrees to join. There's absolutely no question that there's mutual consent there. I know that. When B moves on to invite C, C comes in. A always has the option to turn C away, to say, C, I didn't want you here. It was always my decision to not have you be a part of this house. I know you just walked in, but I want you out. And that is specifically pointed out within the record at, for example, but not limited to, A-158, which says that the user can always control who is in the club and, more importantly, A-160, that indicates that the creator, A, always be allowed to delete members. And so, C says, I would like to be in this house. I'd like to come in. And A says, no, I am leaving you out. You are not allowed to be in. But C gets into the house, though. But the claim does not require... And then A has to, I don't know, eject them. That is a possibility. Yes, it is. I'm not sure how that's mutually consenting to something where A, before anyone gets in the house, gets to assent to it. There's no temporality required in the claim itself. It doesn't require that mutual consent happen before access. It just says that by the time everything is finished, there is a group of people who can access the information and a group of people who cannot. And so, A and C have decided C wants to look at it, A says, no, you can't look at it, and evicts them. That means that you have now established a group which can look at the information and a group which cannot look at the information. And so, even under the strained analysis put forward by PatentOwner, the claim still reads directly on the Niebauer reference. And Niebauer provides a content management website that allows you to create a club whereby the club can be limited to invitation only, and there is consent of all people, even if a secondary invitation is made. That, though, does also not change the fact, and I'd like to point out very specifically, of HP versus MUSEC, which specifically says that if there are embodiments of a method that take care of or anticipate the claim, it doesn't matter that there may be some other times where the claim is not met. And so, there's always the reasonable chance that A invites B and C, and that's it. B and C accept, there's mutual consent, and a group is formed that has exclusive access to that content. So, MUSEC would say that that premise alone provides anticipation. I'm just saying that it goes even beyond that because A always has the ability to control who maintains themselves in the house. Post and Counsel cites A-975. What do you have to say about that text on L? So, on A-975, I think the thing that's most important about that is that A-975 is talking about what the creator of the club can do, not what other members of the club can do. So, A-975 specifically is talking about what the founder can do when he is customizing his club. And so, this is founder abilities, not other user abilities. He's trying to conflate the two together. So, A-975 doesn't support his proposition. If your honors have no further questions. Thank you very much. Thank you very much. Mr. Brown, I'll restore you back to four minutes of time. Oh, thank you very much, Your Honor. While we're looking at A-975, Facebook is just wrong about that. This is describing the startup of a club. That's the invite friends link that it refers to. But it also says, you may access the same invitation page at any time using the link under member tools, as described previously. So, this passage here is specifically referring to both private, private, unlisted, and listed clubs. And it's saying that they both have member tools that allow people to invite. Going to Judge Chen's analogy, the situation, the problem here, Facebook points out that, yes, the admin can remove members after the fact. But what is the founder supposed to do? The founder is supposed to spend all their time monitoring who's coming in and who's not. When you get an invitation to an unlisted club, not from the founder, but from one of the other members, all you have to do is respond to that invitation and accept, and you're in the club. You're in. There's nothing else to be done. The founder's got to, say he starts a club with five people and he thinks he's having a private conversation. And there's text there. They're going back and forth on the club page with messages. All of a sudden, some other message pops in. It's a guy that just came in because someone else invited. Someone else invited him and he accepted. Those folks get in, and the important thing is they get access to the content without the approval or consent of the founder. These references are very clear. The founder gets admin tools. All members get member tools. All members can invite. Those invitees come in automatically, simply by accepting. That's covered in Nebauer, in Figure 21-9, at, let's see, at A-154. You get this. When you get your invitation, this is the link. It brings you to, yes, I accept. And you can even insert a message. So I'm in my allegedly private club with my five people that I personally invited, and all of a sudden a message pops up from some other guy I don't even know. How'd this guy get in here? I invited him last week. Now he knows everything we've been talking about. I didn't want that. The bottom line, Your Honors, is that for whatever reason, Yahoo designed their Yahoo Clubs to encourage widespread membership by having this invite function available to every member and not controlled by the founder. It's that simple. The board, you can see there's a dispute between us. The board didn't resolve that dispute by making a factual determination. Instead, the board turned it on its head and turned it into claim construction. But they didn't look at the staff. Let me ask you a question before you sit down. Let's assume this case is affirmed here. Then you go back to the Southern District. What's the next step? No, well, if it's affirmed here, we'd have to look at the technical appeal. Yes, Your Honor. It's a re-exam in context. Okay. We thank you very much for the argument. We thank all litigants for the argument today. That's all for the arguments. This court stands adjourned. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock.